UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BARBARA LYNNE
WOODMANCY,

                      Plaintiff,                  5:12-cv-991
                                                      (GLS)

                      v.

**CAROLYN W. COLVIN,** Acting
Commissioner of Social Security.

                      **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Law Offices of Kenneth Hiller, PLLC    JAYA A. SHURTLIFF, ESQ.
6000 North Bailey Avenue - Suite 1A    KENNETH R. HILLER, ESQ.
Amherst, NY 14226

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN       SANDRA M. GROSSFELD
United States Attorney                    Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Barbara Lynne Woodmancy challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Woodmancy's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On June 15, 2009, Woodmancy filed an application for SSI under the Social Security Act ("the Act"), alleging disability since April 4, 2001. (Tr.[1] at 45, 97-100.)  After her application was denied, (*id.* at 52-56), Woodmancy requested a hearing before an Administrative Law Judge (ALJ), which was held on October 28, 2010, (*id.* at 21-43, 58-60).  On January 27, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*Id.* at 1-5, 8-20.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (Dkt. No. 9.)

Woodmancy commenced the present action by filing her complaint on June 19, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. Contentions

Woodmancy contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 9-23.) Specifically, Woodmancy argues that the ALJ: (1) improperly determined the severity of her impairments; (2) erred in determining her residual functional capacity (RFC); (3) incorrectly evaluated her credibility; and (4) failed to obtain the testimony of a vocational expert (VE). (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 12 at 2-17.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 3-8; Dkt. No. 12 at 1-2.)

### V. Standard of Review

3

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severe Impairments

First, Woodmancy claims that the ALJ failed to properly assess the severity of her anemia, sleep apnea, and pancreatitis. (Dkt. No. 11 at 9-13.) The Commissioner counters, and the court agrees, that as the ALJ found that Woodmancy suffered other severe impairments, and the sequential analysis continued, any error at step two is harmless. (Dkt. No. 12 at 6-8.)

At step two of the sequential analysis, the ALJ must "determine whether the claimant has a severe impairment." *Christiana*, 2008 WL

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

4

759076, at *3; see 20 C.F.R. § 416.920(a)(4)(ii), (c). A claimant has the burden of establishing that she has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," 20 C.F.R. § 416.921(b)(1), and "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting," id. § 416.921(b)(3)-(6). Notably, the omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination. See Tryon v. Astrue, No. 5:10–CV–537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); see also Plante v. Astrue, No. 2:11–CV–77, 2011 WL 6180049, at *4 (D.Vt. Dec. 13, 2011).

    Here, the ALJ determined that Woodmancy suffered mild restrictions

5

in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and only one episode of decompensation. (Tr. at 14-15.) Thus, she concluded that Woodmancy's substance abuse, depression, and facet arthropathy were severe, but her anemia, sleep apnea, and pancreatitis were not severe. (*Id.* at 13-14.) The ALJ based her decision primarily on Woodmancy's treatment records. (*Id.* at 14, 215-46, 291-307, 308-16, 317, 328.)

Woodmancy contends that her anemia, sleep apnea, and pancreatitis should have been found to be severe impairments. (Dkt. No. 11 at 11.) The ALJ determined that these impairments were not severe, and this determination was supported by substantial evidence. (Tr. at 14.) Specifically, the record demonstrates that Woodmancy's symptoms from her anemia, sleep apnea, and pancreatitis have either been lessened with treatment, or have not been recurring, and therefore have not been shown to be more than minimally limiting. (Tr. at 215-46, 308-16, 317).

Moreover, as the disability analysis continued and the ALJ considered claimant's severe and non-severe impairments in her RFC determination, any error at step two is, at most, harmless. *See Tryon*,

6

2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante*, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

**B.    RFC Determination**[3]

    1.    *Evaluation of Opinion Evidence*

With respect to the ALJ's RFC[4] determination, Woodmancy argues that the ALJ improperly evaluated the opinion evidence. (Dkt. No. 11 at 13-18.) Specifically, Woodmancy contends that the opinion of her treating physician, Dr. Debra Buchan, and nurse practitioner Sharlene Nemitz, indicating that she had decreased physical stamina, could sit five to ten minutes and stand ten to fifteen minutes, could sit and stand/walk less than

---

    [3] The court notes Woodmancy's contention that the ALJ's findings are internally inconsistent and therefore in error. (Dkt. No. 11 at 13.) Specifically, Woodmancy points to the ALJ classifying her restrictions in activities of daily living as both "mild" and "moderate." (*Id.*; Tr. at 15.) However, the ALJ's RFC determination was otherwise supported by substantial evidence and Woodmancy has failed to argue how this constituted legal error warranting remand.

    [4] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Charter*, 77 F.3d 41, 46 (2d Cir. 1996).

7

two hours in an eight-hour work day, and had "no useful ability to function in regard to understanding and remembering very short and simple instructions" should have been given at least "significant weight." (*Id.* at 14-15.) According to Woodmancy, Dr. Buchan's opinion was entitled to controlling weight because it was "more specific and detailed" than the findings in other record evidence. (*Id.* at 17-18.) The Commissioner asserts that Dr. Buchan's opinion was not entitled to controlling weight because it was inconsistent with other evidence of record. (Dkt. No. 12 at 8-12.) The court agrees with the Commissioner.

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c)(2)-(6).

8

Here, the ALJ explained that she "cannot give much weight to the Nemitz/Buchan opinion" because it was inconsistent with treatment notes and other medical opinions, namely the opinions of Dr. Kalyani Ganesh and Dr. Kristen Barry, consultative examiners. (Tr. at 17-18.) The ALJ properly acknowledged that Dr. Buchan, whose "first contact" with Woodmancy was in 2004, (*id.* at 439), opined in December 2010 that Woodmancy could not sit, stand or walk more than two hours in an eight-hour workday. (*Id.* at 17, 439-42.) Dr. Buchan also indicated that Woodmancy had no useful ability to understand and remember very short and simple instructions, and was significantly limited in, but not precluded from, carrying out simple instructions. (*Id.* at 441.)

Because Dr. Buchan's opinion regarding the severity of Woodmancy's limitations was inconsistent with substantial evidence[5] of record, however, the ALJ did not err in giving less than controlling weight to her opinion. In particular, Dr. Ganesh was of the opinion that there was "no gross physical limitation noted to sitting, standing, walking, or the use

---

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citation omitted).

of upper extremities." (*Id.* at 253.) Moreover, Dr. Barry conducted a psychiatric evaluation of Woodmancy in September 2009. (*Id.* at 255-259.) After her examination, Dr. Barry opined that Woodmancy "is able to follow and understand simple directions and instructions, and she is able to maintain her attention and concentration fairly well," and that she "should be able to perform simple tasks independently." (*Id.* at 258.)

Consistent with the requirements of 20 C.F.R. § 416.927, which was specifically cited by the ALJ, she determined that the more restrictive opinion of Dr. Buchan and Nurse Practitioner Nemitz was not supported by other medical opinions and treatment notes, (*id.* at 17-18), a legitimate basis for discounting opinion evidence, *see* 20 C.F.R. § 416.927(c)(3). For these reasons, the ALJ did not err in weighing the opinions of record, and this argument is without merit.

2. *Failure to perform function-by-function analysis*

Woodmancy also contends that the ALJ failed to provide functional findings relating to her exertional RFC. (Dkt. No. 11 at 19-20); *see* 20 C.F.R. § 416.945(b); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 436 (N.D.N.Y. 2008). Although the ALJ could have provided further clarification with respect to Woodmancy's capabilities, as the ALJ's decision examined the

10

relevant factors in reaching an RFC determination, and the ultimate determination was supported by substantial evidence, this shortcoming does not amount to legal error. (Tr. at 15-19); *see Cichocki v. Astrue*, No. 12-3343-CV, 2013 WL 4749644, at *4 (2d Cir. Sept. 5, 2013); *Irizarry v. Astrue*, No. 5:09-cv-1370, 2012 WL 177969, at *2 (N.D.N.Y. Jan. 23, 2012).

The court also notes Woodmancy's contention that the ALJ erred because she failed to "make any accommodation for Woodmancy's impaired ability to cope with work stress." (Dkt. No. 11 at 18.) However, this argument is belied by the ALJ's reliance on the opinion of Dr. Barry, who opined that Woodmancy could still perform basic work tasks despite her "difficulty handling stressors." (Tr. at 18, 258.)

## C. Credibility

Woodmancy next argues that the ALJ improperly evaluated her credibility. (Dkt. No. 11 at 20-22.) As to this argument, Woodmancy simply states that "[t]he ALJ did not . . . engage in applying the other factors such as precipitating factors of symptoms, medications, or other methods Woodmancy uses to alleviate her symptoms." (*Id.* at 22.) The court disagrees.

11

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

Here, the ALJ determined that Woodmancy's "statements concerning

the intensity, persistence and limiting effects of [her] symptoms" were "not credible to the extent they are unsupported by the totality of the record." (Tr. at 17.) In particular, the ALJ found "numerous inconsistencies between [Woodmancy's] testimony and the evidence of record," (*id.* at 19), and a lack of "a longitudinal work history to bolster her credibility," (*id.* at 17). The credibility determination is amply supported, and it reflects a fair application of the governing regulation.

Despite Woodmancy's claims at the hearing that she was unable to sit, stand, or walk for more than five or ten minutes at a time, to lift more than five pounds, or to dress herself, brush her hair, or cook, (*see, e.g.*, *id.* at 35, 37, 38, 41-42), the record is replete with contradictory evidence, (*see, e.g.*, *id.* at 47, 252-253, 257, 275). Moreover, it is clear that the ALJ appropriately considered the factors set forth in 20 C.F.R. § 416.929(c)(3) by her specific reference to § 416.929, and discussion of Woodmancy's daily activities, the intensity of her symptoms, medications, and treatment. (Tr. at 16-19.)

**D.** **Vocational Expert Testimony**

Lastly, Woodmancy contends that the ALJ should have produced the testimony of a VE to establish that there is other work that she could

13

perform, despite her limitations. (Dkt. No. 11 at 22-23.) The Commissioner responds that the ALJ's reliance on the Medical-Vocational Guidelines to determine that Woodmancy could perform other work was appropriate. (Dkt. No. 12 at 16-17.) The court agrees with the Commissioner.

Initially, the Regulations provide that the "mental activities . . . generally required by competitive, remunerative, unskilled work [include u]nderstanding, remembering, and carrying out simple instructions[; m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions[; r]esponding appropriately to supervision, co-workers and usual work situations[; and d]ealing with changes in a routine work setting." SSR 96-9p, 61 Fed. Reg. 34,478, 34,483 (July 2,1996); *see* 20 C.F.R. § 416.921(b)(3)-(6). Moreover, in making a step-five ruling, an ALJ may rely on the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 416.969; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, when a claimant's nonexertional impairments "significantly limit

14

the range of work permitted by his exertional limitations," the Commissioner "must introduce the testimony of a [VE] (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603, 605 (2d Cir. 1986)

Woodmancy argues that because her depression was found to be a "severe impairment," the ALJ should have found that she was unable to carry out the basic mental demands of unskilled work. (Dkt. No. 11 at 23.) However, despite Woodmancy's impairment, the ALJ found that Woodmancy "retain[ed] the ability (on a sustained basis) to understand, carry out, and remember simple instructions[,] . . . respond appropriately to supervision, coworkers, and usual work situations and to deal with changes in a routine work setting." (Tr. at 16.) This conclusion was supported by substantial record evidence, namely the opinion of Dr. Barry, who opined that Woodmancy was "able to follow and understand simple directions and instructions, and she is able to maintain her attention and concentration fairly well," (*id.* at 258), and that of E. Kamin, state agency consultant, who opined that Woodmancy was "able to perform basic demands of competitive, remunerative unskilled work on a sustained basis," (*id.* at 282).

15

Thus, after noting the mental abilities required for unskilled work and concluding that "the evidence establishes that the claimant has no significant limitations in the performance of these basic mental demands of work," the ALJ applied the grid guidelines and found Woodmancy not disabled. (Tr. at 19-20); *see* SSR 83-10, 1983 WL 31251, at *3 (1983) (explaining that the rules contained in the grid guidelines "reflect[] the presence of nonexertional capabilities sufficient to perform unskilled work at the pertinent exertional levels"). As the ALJ determined—with the support of substantial evidence—that Woodmancy's nonexertional impairments did not "'significantly limit the range of work permitted by her exertional limitations,'" consultation with a VE was not required. *Bapp*, 802 F.2d at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)); *see* SSR 83-14, 1983 WL 31245 at *4-5 (1983); SSR 85-15, 1985 WL 56857 at *7-8 (1985).

## E.  Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Woodmancy's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 9, 2013
Albany, New York

_Gary L. Sharpe_
Gary D. Sharpe
Chief Judge
U.S. District Court